UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARYANN PUTMAN,

    Plaintiff

  v.

LIBERTY MUTUAL INSURANCE
COMPANY, et al.,

    Defendants.

Case No. 1:08cv552

Judge Michael R. Barrett

## ORDER

This matter is before the Court pursuant to Defendants' motion for summary judgment (Doc. 22). Plaintiff filed a memorandum in opposition (Doc. 25) to which Defendants replied (Doc. 28). This matter is now ripe for review.

Underlying Facts and Procedural History

This matter was previously before the Court on Defendants' motion for judgment on the pleadings. (See Order at Doc. 17). At that time, the Court granted Defendants' motion as to Plaintiff's age and gender discrimination claims, leaving only a claim for intentional infliction of emotional distress. The Court had granted Plaintiff leave to amend the complaint in light of the above ruling, however, Plaintiff did not do so.

Plaintiff was hired as a sales representative by Defendant Liberty Mutual Insurance Company on September 15, 2003. At the time period relevant to this litigation, Plaintiff was subject to a progressive discipline policy should she not meet required performance

levels. (See Doc. 22-1, PageId 189-190). In April, 2006, Plaintiff was diagnosed with Coronary Artery Disease and required angioplasty surgery. She requested one week of flexible time-off, from April 20-28, 2006, for the surgery. Plaintiff returned to work after her surgery without restrictions but later required intermittent FMLA leave to attend cardiac rehabilitation exercise sessions in the afternoon, starting June 12, 2006. Plaintiff had been previously attending cardiac rehabilitation after work. These afternoon sessions lasted seven weeks, during which time Plaintiff's work scheduled was restricted by her cardiologist to three half-days per week and no more than eight hours per day the other two days. (Putman Depo., p121-124). As a result of this reduced work schedule, Defendants reduced Plaintiff's minimum production requirements by 30% to match her reduced schedule. At the end of the seven week period, Plaintiff returned to work full time with an eight hour per day restriction. (See Doc. 21-1, PageId 246).

On August 14, 2006 Plaintiff was issued a written warning for failure to meet minimum production requirements by her then sales manager, J. Brent Kindle, which included a threat of probation if her production did not improve. Plaintiff told Kindle that the reduced minimum requirements were outside of her capabilities based upon her restrictions. (Doc. 1, ¶17). However, at or about this same time, Shaun Thatcher became Plaintiff's new sales manager and the August 14, 2006 written warning was dissolved. (See Affidavit of Jerry Foy, Doc. 22-1, PageId 184).

In September, 2006 Plaintiff required a second angiogram. She was unable to work from August 31 through September 17, 2006. Upon her return, her restrictions were unchanged. She was limited to only eight hours of work per day. Unfortunately, Plaintiff continued to not meet her minimum production requirements. She was issued another

written warning on November 21, 2006 informing her that if she failed to meet minimum performance standards by January 26, 2007 that she would thereafter be subject to a 60-day performance probation period.

On February 12, 2007, Plaintiff was placed on a 60-day performance probation and informed that she could be terminated if she failed to meet her minimum production requirements by April 12, 2007. Plaintiff thereafter met her minimum production requirements and was taken off probation. She had no further production deficiencies. However, she still felt pressure to continue to meet the production requirements required of her. On July 7, 2008, Plaintiff resigned from her position at Liberty Mutual.

Plaintiff asserts that the pressure placed upon her by her sales managers, Kindle and Thatcher, as well as the regional manager Jerry Foy, after her heart surgery was designed to effect her health and employment in such a detrimental way that it caused her stress, anxiety and created great emotional distress. She argues that in order to meet the minimum production requirements that it was necessary for her to work more than 8 hours per day. To support her claim she has presented the affidavits of two former colleagues that state that they were required to make up for Plaintiff's reduced production schedule which required them each to work 12 hour days and that this additional workload was designed to direct contempt towards Plaintiff. (See Doc. 25-1, 27). The affiants further state that upon Plaintiff's return to work after her first surgery that they noticed that she was tired, had lost weight and was suffering stress and that the stress of her job caused her to continue having chest pains. The affiants report that the weekly sales report generated by the sales manager included criticisms of Plaintiff but also included offers to help; however, the affiants believe that those offers to help were insincere. They

also state that during the seven week period that Plaintiff was attending rehab that she was denied access to the lead books because she was not working full time. The affiants then state that they observed Plaintiff in meetings with her sales manager that were hostile towards her and that she would leave these meetings being very disturbed, breathing heavy and concerned about her blood pressure. Her demeanor would change and she would sometimes be forced to leave work because she was unable to do her work while suffering chest pains and having blood pressure issues. The affiants finalize their affidvits by stating that their observation of Defendants' treatment of Plaintiff to cause her to suffer from anxiety was unreasonable for anyone to endure. (See Doc. 25-1, 27).

In addition to these affidavits, Plaintiff submits two emails that Defendant Jerry Foy sent. On October 7, 2006, Foy sent an email to the sales team that depicted an altered picture of himself with big lips and dark skin. On March 5, 2008, Foy sent another email to the sales team that included a picture of a coon dog. Plaintiff argues that these pictures depict negative racial symbols which were incredibly offensive to Plaintiff, who is African American, and that they caused her stress.

<u>Legal Standard and Analysis</u>

A.  Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986). The moving party has the

burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

In ruling on a motion for summary judgment, "[a] district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also *L.S. Heath & Son, Inc. v. AT&T Information Sys., Inc.,* 9 F.3d 561 (7th Cir. 1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir.), cert. denied, 506 U.S. 832, 121 L. Ed. 2d 59, 113 S. Ct. 98 (1992)("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ..."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Beatty v. UPS,* 267 F. Supp. 2d 823, 829

(D. Ohio 2003).[1]

      B.      Intentional Infliction of Emotion Distress

A claim for intentional infliction of emotional distress requires plaintiff to show that (1) defendant intended to cause emotional distress, or knew or should have known that actions taken would result in serious emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious. *Hanly v. Riverside Methodist Hosp.* (1991), 78 Ohio App. 3d 73, 82, 603 N.E.2d 1126. *See also Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of America* (1983), 6 Ohio St. 3d 369, 374, 453 N.E.2d 666; *Tschantz v. Ferguson* (1994), 97 Ohio App. 3d 693, 647 N.E.2d 507. Extreme and outrageous conduct occurs, ". . . only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Yeager*, 6 Ohio St. 3d at 376. Extreme and outrageous character of conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress. *Tschantz, supra* at 712; *Mason v. U.S. Fid. & Guar. Co.* (1990), 69 Ohio App. 3d 309, 317, 590 N.E.2d 799. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of

---

[1]Unfortunately, Plaintiff does not point the Court to any cites in the Record. She merely states that she is relying on the verified complaint and attached affidavits. The only deposition of record is portions of Plaintiff's deposition submitted by Defendants.

6

knowledge of the plaintiff's susceptibility, where it would not be so if he did not know. *Foster v. McDevitt* (1986), 31 Ohio App. 3d 237, 240, 511 N.E.2d 403. Major outrage is essential, not just the knowledge that the other will be insulted or have his feelings hurt. *Id*.

Based upon the evidence before this Court, the Court must grant Defendants' motion for summary judgment. No reasonable juror could find that a question of fact exists here. Defendants did not engage in extreme and outrageous conduct nor has any evidence of severe emotion distress been shown.

First, employers have a legitimate right to criticize and correct its employees. *Scacco v. United Parcel Services, Inc.*, 1991 Ohio App. LEXIS 4860, *11 (Ohio Ct. App., Cuyahoga County Oct. 10, 1991)(Defendant's conduct in criticizing Plaintiff for substandard performance after Plaintiff returned from a long-term disability was not outrageous); *Webb v. Ohio Casualty Ins. Co.*, 1990 Ohio App. LEXIS 1465 (Ohio Ct. App., Butler County Apr. 16, 1990)(Defendant's criticism of Plantiff's performance may well have been harsh or unfair; nevertheless, the company's right to criticize that performance and to insist upon improvement must be recognized); *McCauley v. PDS Dental Labs., Inc.*, 2008 Ohio 2813, P28 (Ohio Ct. App., Cuyahoga County May 29, 2008)(Defendant's methods might not have been the most effective employee management techniques, but her legitimate criticisms of Plaintiff's performance and her efforts to bring that performance up to expectations, even if harsh or unfair, did not exceed the bounds of decency and were not extreme and outrageous.)

A good example of conduct that is extreme and outrageous is set forth in *Foster*

7

*v. McDevitt*, 31 Ohio App. 3d 237 (1986) where the evidence revealed that Foster's supervisor, who knew he had a heart condition, subjected him to extremely demeaning treatment, reduced his responsibilities, lowered his pay and forced him to do hard labor. She told others she did not know how a real man would take the abuse she gave Foster and that she was going to force him to quit. Eventually Foster's supervisor forced him to do install a eighty-pound door, normally a two person job, and threatened to fire anyone who attempted to assist him. That evening Foster suffered heart problems and was hospitalized. His supervisor said he was faking and sent a message, through another employee, telling Foster if he was not back to work in two days he would be fired. He did not return in that time and was eventually fired even though he had a doctor's restriction not to work for several more weeks. Foster later died of a heart attack. Clearly, the conduct in *Foster* is extreme and outrages.

Although the Court is not approving of Defendants' treatment of Plaintiff here, the facts do not come close to meeting the extreme and outrageous standard. Defendants reduced Plaintiff's minimum production requirements by the same percentage that her work schedule was reduced and made multiple offers to help her reach her production requirements. Although Plaintiff and the affiants believe that those offer to help were insincere, Plaintiff never tested the sincerity because she never asked for help. Defendants did put pressure on Plaintiff to meet her requirements, but such pressure is not extreme or outrageous. It is undisputed that Plaintiff was failing to meet her minimum requirements. As set forth above, employers have a right to criticize and discipline employees for substandard performance.

Even if such conduct was extreme or outrageous, Plaintiff has failed to show that

8

the Defendants' conduct was intended to cause emotional distress, or that they knew or should have known that their actions would result in serious emotional distress. Specifically, Plaintiff admits that Jerry Foy did not mean to cause her any stress, only that he expected a lot out of her because of her experience and that she did not think the company realized the stress that they put upon her. (Putman Depo., pp 94, 130-131). She also admits that Thatcher did not know that he was causing her blood pressure to increase. (Id. at p 88). In response to the question, "...do you have any reason to believe that any one of the defendants wanted you or your health to suffer?", Plaintiff responded, "That's hard for me to answer that. I don't, in my heart and in my spirit, I don't think that they did, but I think they were looking at self-gratification and my health fell short of that. I mean it just kind of fell on the back burner." She continued by stating, "Well, it is a production-type atmosphere in sales. I know that, been in it all my life, and I think that personal satisfaction of each individual persons because of what their goals were, what their requirements were, what they needed to meet, I think they look at that more than what truly my health condition was. I don't know if they realized what it was doing to me, but I think that I stressed it enough that they should have..." (Id. at p 221).

      Furthermore, Plaintiff has failed to show that she suffered from serious emotional distress, which has been defined as an "emotional injury which is both severe and debilitating." *Paugh v. Hanks*, 6 Ohio St. 3d 72, 78 (1983). Here Plaintiff states that she was stressed, worried about her blood pressure, and would leave work in tears at time.

      The facts to support Plaintiff's injury are similar to those set forth in *Oglesby v. City of Columbus* where the Court found that there was insufficient evidence from which reasonable minds could conclude that plaintiff suffered severe emotion distress. The

9

*Oglesby* Court stated:

> As noted, plaintiff submitted no medical evidence regarding his claims, but relied instead upon his own deposition and the deposition of his sister. In fact, the record indicates that plaintiff was neither treated nor did he seek medical help for the distress he allegedly suffered. While the symptoms described by plaintiff may be common to individuals who have felt wrongly treated by workplace circumstances, the evidence is insufficient to show that plaintiff sustained debilitating injuries, or that his anguish was so severe that no reasonable person could endure it. *Jones v. White* (1997), 1997 Ohio App. LEXIS 4636, Summit App. No. 18109 (affidavit testimony that plaintiff was distressed, upset, anxious, overwrought and sobbing uncontrollably, and plaintiff's own statements that she has insomnia, is agitated and experiences muscle tension, nausea, vomiting and diarrhea, without more, does not rise to the required level of seriousness). *See, also, Halton v. Great Clips*, Inc. (N.D.Ohio 2000), 94 F. Supp. 2d 856, 871 HN5 (claims by plaintiffs that they suffered humiliation, embarrassment and stress insufficient to rise to the level necessary to constitute the type of physical or serious emotional injury contemplated in the tort of intentional infliction of emotional distress).

*Oglesby v. City of Columbus*, 2002 Ohio 3784, P22 (Ohio Ct. App., Franklin County July 25, 2002).

Plaintiff has presented only her verified complaint and the affidavits of two former co-workers.[2] The affiants state that Plaintiff was tired, had lost weight, was suffering stress and continuing to have chest pains. They further state that Plaintiff would leave meetings very upset, breathing heavy and concerned about her blood pressure. She would sometimes be forced to leave the office because she was unable to do work while suffering chest pains and having blood pressure issues. (See Doc. 25-1, Doc. 27).

Plaintiff has not sought medical treatment and admits to not being diagnosed with any type of psychological disorder or mental disorder (Putman Depo., pp206-207). She merely asserts that she was pressured daily, weekly and monthly to meet certain quotas

---

[2]Although certainly not required of the Court, the Court did read the portions of Plaintiff's deposition that Defendants attached to their motion. This testimony was given equal consideration.

and that the pressure caused her stress and led to feelings of heaviness in her chest (see Putman Depo., p66), that the threats to terminate her caused her mental anguish due to her concern about her financial losses (see Doc. 1, ¶¶48-49), that being made to come in at 8:30am instead of 9:00am caused her additional stress because she had to deal with morning traffic (see Putman Depo., pp163-164), and that, at times, she would have to leave the office crying because of the pressure that was placed on her (see Putman Depo., p222).

This emotional distress is not anymore than a normal person would feel when being faced with possible job termination due to subpar performance. Her suffering does not rise to the level of serious emotion distress that is severe and debilitating.

III.    Conclusion

Based upon the foregoing, Defendants' motion for summary judgment is hereby GRANTED. This matter is now closed. The Clerk of Court is directed to terminate this matter from the docket of this Court, including all other pending motions.

**IT IS SO ORDERED.**

                                                           *s/Michael R. Barrett*
                                                           United States District Court